**Evona Hanna CUNNINGHAM, Plaintiff, Respondent and Cross-Appellant,**

v.

**Franklin E. CUNNINGHAM and Lola M. Cunningham, Defendants, Appellants and Cross-Respondents.**

No. 19212.

Supreme Court of Utah.

Sept. 19, 1984.

Pete N. Vlahos, Ogden, for defendants, appellants and cross-respondents.

C. DeMont Judd, Jr., Ogden, for plaintiff, respondent and cross-appellant.

ZIMMERMAN, Justice:

Defendants appeal from an order of the district court adjudicating interests of the parties in several parcels of real property located in Ogden, Utah. We affirm in part and reverse and remand in part.

In 1975, the plaintiff, who was then 64 years old, owned a savings account and two pieces of real property in Ogden—a home on 34th Street and a home on Polk Avenue. Although she was married, her husband was in very poor health and in a rest home. (He died in October of 1975.) Sometime prior to the fall of 1975, defendant Franklin

Cunningham, plaintiff's brother-in-law, and his wife, Lola Cunningham, expressed a desire to help the plaintiff with her affairs. They induced her to place her savings account in joint tenancy with Franklin. Franklin then withdrew $13,000 and placed it in his own account.[1] Thereafter, defendants caused the plaintiff to be hospitalized for chronic alcoholism.

On September 9, 1975, immediately after plaintiff was released from the hospital, Franklin took plaintiff to a friend who was a realtor to effect a "sale" of the Polk Avenue property. The realtor prepared a warranty deed that purported to convey the property to defendants. The deed did not describe any terms of the "sale." And other than the deed, no writing was prepared to reflect the terms of the transaction. At the time plaintiff signed the deed, Franklin Cunningham orally informed her that he would pay her $1,000 immediately and $100 per month until her death. This is the only evidence that related to the terms of the transaction.

A little over a year later, on November 17, 1976, Franklin once again took plaintiff to the same realtor's office where she signed a deed conveying the 34th Street house to defendants. Plaintiff testified that she kept this deed in a drawer in her home and that she intended the title to vest in defendants at the time of her death. Defendant Franklin conceded that this was the understanding, but admitted that he took the deed and recorded it approximately three years later because he was concerned that she might deed the property to someone else.

Defendants have paid plaintiff $100 per month on the Polk Avenue property since 1975 and, in addition, have expended some time and effort fixing up the property. Defendants have been living in the Polk Avenue dwelling.

In 1982, plaintiff sued defendants claiming no delivery on the 34th Street deed and undue influence on the Polk Avenue deed and seeking reconveyance of both properties to plaintiff or invalidation of both deeds. After a bench trial, the court issued its memorandum decision. It found that the deed for the 34th Street property was void for nondelivery and ordered it vacated. With respect to the Polk Avenue property, the court found that plaintiff reposed great trust and confidence in Franklin and a confidential relationship existed between plaintiff and defendant Franklin, that for this reason she did not question the transaction or seek independent advice, that there were no negotiations regarding purchase price or terms, only Franklin's statement of what he would pay plaintiff, and that he substituted his will for hers in the transaction. The court noted the general rule that under such circumstances a presumption of undue influence arises and found it not to be rebutted; therefore, "this transaction must ... fail." However, it also found that Franklin did not "fully appreciate that his actions were wrongful ... and has made some improvements to the Polk property." The court stated that it was "unclear as to its authority" with respect to the proper remedy and asked for further briefs by the parties.

After further briefing, the court filed a supplemental memorandum decision. The findings reflected in the earlier memorandum were not disturbed. The court found that in 1975, the Polk Avenue property was worth approximately $42,000 and had a fair rental value of $300 per month. It also found that since 1975 defendants had paid plaintiff approximately $10,000 in the form of a down payment and monthly payments and that plaintiff had "sat on her rights for a period of time and accepted payments from defendants." The court stated that while plaintiff was not guilty of laches, these circumstances could be taken into account in fashioning a remedy. It concluded that:

> the equitable resolution of this case would be to leave defendants in posses-

---

**1.** In 1982, after this suit was filed, the $13,000 was returned to plaintiff. This transaction is not at issue in this appeal.

sion and award plaintiff a money judgment for the approximate actual value [of the property] at the time of the deed and not credit payments made [by defendants] because [the] payments did not exceed reasonable rental value.

It summarized by stating the defendants were left in possession for three reasons: (i) plaintiff's delay in asserting her rights; (ii) defendants' having put much time and effort into improvement and upkeep of the property, "which cannot reasonably be accounted for;" and (iii) defendants' "somewhat good faith" belief in the validity of the transaction. Judgment was entered vesting title in defendants and granting plaintiff a judgment in the amount of $42,-000.

▮ Both parties appealed, plaintiff seeking to void the Polk Avenue deed and defendants seeking to confirm the 34th Street deed and overturn the $42,000 judgment. Plaintiff asserts that since the trial court found her not barred by laches, it should not have considered the post-transaction delay in fashioning a remedy and should have voided the Polk Avenue deed both as violative of the statute of frauds and because of defendants' undue influence. Defendants contend that the statute of frauds is avoided by part performance;[2] that the trial court's finding of undue influence is based on the finding of a confidential relationship which, in turn, is founded largely on the brother/sister-in-law relationship between Franklin and plaintiff, and that this is not sufficient to support the finding of a confidential relationship; and, finally, that the court's equity powers do not permit it to fashion a remedy without reference to the terms of the underlying transaction.

▮ As to the 34th Street property, we reject defendants' contentions and find that the conclusion of the trial court that the deed is invalid for nondelivery is amply supported by the record evidence. We therefore affirm the judgment voiding the 34th Street deed.

As for the Polk Avenue property, the judgment must be reversed. Rather than void the deed based on the finding of a confidential relationship and an unrebutted presumption of undue influence, as well as actual evidence of overreaching, the trial court appears to have attempted to use its equitable powers to recast the "sale" in terms that it thought would reflect an arm's-length transaction. Although we sympathize with the trial judge's effort to do equity, that effort must fail for several reasons.

First, the final judgment of the court conflicts with its findings. In its initial memorandum decision, the court specifically found that the "sale" of the Polk Avenue property was the result of undue influence by defendants, and therefore, it must fail. These findings were not disturbed by the supplemental memorandum. Yet in the final judgment, the sale was affirmed.

▮ Second, we are aware of no authority that can support the trial court's attempted exercise of its equitable powers under the circumstances of this case. A court does not have carte blanche to reform any transaction to include terms that it believes are fair. Its discretion is narrowly bounded. Reformation may be appropriate where both parties were mistaken as to a term of the contract, or where one party is mistaken and the other party is guilty of inequitable conduct, see *Bown v. Loveland*, 678 P.2d 292 (Utah 1984), but it is not available to rewrite a contract to include terms never contemplated by the parties. *Isaak v. Massachusetts Indemnity Life Insurance Co.*, 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981). Here the record does not reflect that the parties agreed to a sale for fair market value at the time of the transaction, nor does it show that plaintiff was

---

**2.** In their arguments to this Court, both parties focus principally on whether our Statute of Frauds, U.C.A., 1953, § 25-5-1, *et seq.*, invalidates the sale of the Polk Avenue property. We do not reach the issue because the record indicates plaintiff first raised this issue below in a post-trial memorandum. There is no indication that the trial court reached or ruled on the issue. *Cf. In re Estate of Ekker*, 19 Utah 2d 414, 432 P.2d 45 (1967).

mistaken about any term of the sale; rather, it supports the trial court's initial finding that defendant Franklin overreached and violated the trust and confidence reposed in him by plaintiff. Under Utah law, this required a voiding of the deed.

When a confidential relationship exists between parties, and a transaction occurs that benefits the one in whom confidence is placed, a presumption arises that the transaction is unfair. *E.g., Bradbury v. Rasmussen,* 16 Utah 2d 378, 383, 401 P.2d 710, 713 (1965). This shifts to the benefiting party the burden to persuade the court that there was no fraud or undue influence exercised toward the other. *In re Swan's Estate,* 4 Utah 2d 277, 293, 293 P.2d 682, 693 (1956). From the findings of the trial court, which are amply supported by the evidence, the burden was properly shifted to defendants, and they wholly failed to carry it. The fact that they were in "somewhat good faith" is not enough to free them from the consequences of their actions. The deed should have been voided. *Seequist v. Seequist,* 524 P.2d 598 (Utah 1974); *Albright v. Medoff,* 54 Or. App. 143, 634 P.2d 479 (1981).

Defendants are correct in arguing that the mere fact that plaintiff and defendant Franklin were brother and sister-in-law is not enough to prove that a confidential relationship existed. *See Nelson v. Nelson,* 30 Utah 2d 80, 83, 513 P.2d 1011, 1013 (1973); *Bradbury v. Rasmussen,* 16 Utah 2d at 383, 401 P.2d at 713. However, the trial court did not rely on that fact alone; rather, it specifically found that plaintiff actually reposed great trust and confidence in Franklin, that because of this she did not question the terms of the transaction or seek outside advice, that there were no negotiations over the terms of the transaction, and that Franklin substituted his will for that of the alcoholic plaintiff. Plaintiff, then 64 years old, conveyed away a $42,000 piece of property with a rental value of $300 per month for $1,000 plus an expectation of $100 per month for the remainder of her life. To realize the 1975 fair market value of her property, plaintiff would have had to live an additional 34 years, and this does not take into account the substantial additional amount in interest that would have been due had plaintiff's financing of defendants' "purchase" been at fair market interest rates.

A final problem with the trial court's ruling is that it specifically found that plaintiff's conduct did not amount to laches, but it refused to void the deed because the plaintiff "sat on her rights for a period of time and accepted payments from defendants." If the plaintiff was not guilty of laches, then that defense failed, and the trial court should not have affirmed the sale. If plaintiff was guilty of laches, or was estopped from denying the transaction, or if she somehow ratified the sale on defendants' original terms, the court should have enforced the original contract as dictated by Franklin. It was not free to affirm the sale on modified terms because laches was almost, but not quite, proven.

In sum, on the record and findings we have before us, the judgment of the trial court as to the Polk Avenue property cannot stand. We therefore reverse that portion of the judgment and remand for entry of a judgment voiding the Polk Avenue deed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.